MARCUS T. HUN, AS RECEIVER OF THE PEOPLE'S SAVINGS BANK, APPELLANT, *v.* HENRY H. VAN DYCK AND OTHERS, RESPONDENTS.

*Liability of a trustee of a savings bank for an illegal investment — when he is released by the payment of the loss by a subsequent trustee.*

This action was brought by the plaintiff, as the receiver of an insolvent savings bank, to recover from the defendants, trustees thereof, money lost by the bank by reason of illegal purchases of North Carolina bonds made by them. After the purchase of the bonds the superintendent of the banking department having caused the bank to be examined and having found its financial condition to be unsatisfactory required the trustees of the bank, as a condition precedent to not closing it up, to give to it their bonds and other securities to make good any and all deficiencies in its assets to meet its liabilities. Upon the trial the court below found that the entire loss resulting from the illegal purchase had been reimbursed, principal and interest, by the obligors mentioned in the bond.

*Held,* that the defendants were released from liability by the payment of the damages sustained by reason of their illegal acts, although such payment was made by other persons, and that this action could not be maintained.

APPEAL from a judgment dismissing the complaint, entered upon the trial of this action by the court without a jury.

The facts sufficiently appear in the opinion except that some of the obligors in the bond, mentioned in the opinion, were not trustees of the bank at the time the illegal investments were made, and that a portion of the amount paid under the bond was paid by these subsequent trustees.

*Francis C. Barlow,* for the appellant.

*Elliot F. Shepard* and *Nelson J. Waterbury,* for the respondents.

BRADY, J.:

This action was brought by the plaintiff, as receiver of the People's Savings Bank, to recover money lost by the defendants, who were trustees of the bank, in and by the illegal purchase of North Carolina bonds which, except under certain circumstances not existing

when the purchase was made, the trustees were prohibited from buying.

The defense set up was that the whole amount of the loss had been made up by payments by the trustees of the bank, some of whom were such at the time the improper purchase of the bonds occurred, and by others who were not chargeable with all the purchases of bonds made.

The allegation in the answers is that the superintendent of the Banking Department of the State of New York, the officer authorized by law to examine and supervise the management and condition of savings banks, examined into the affairs and condition of the People's Bank, and thereupon required certain bonds and other securities to be given to the bank to make good any and all deficiencies in its assets to meet its liabilities, which bonds and securities were duly given and were a full and complete satisfaction and discharge of any and all claims then existing against the trustees of the bank, or any of them.

Emerson Keyes, a witness on behalf of the defendants, testified that he was a bank examiner and made an examination of the People's Bank in September, 1871; that he stated to the trustees what would be the demand of the superintendent as a condition precedent to not closing the bank, which was that they should give a bond for the deficiency found by the examiner; that the deficiency was at first placed at $45,000, and then at $1,000 more owing to an error in calculations. Upon the giving of the bond it was agreed that the superintendent would not refer the bank to the attorney-general, but accept that as making them solid. And the learned justice presiding in the court below found that the entire loss resulting from the illegal purchase had been reimbursed, principal and interest, and that consequently the receiver was not entitled to recover the damages claimed from the defendants.

The learned counsel for the appellant has assiduously endeavored to avoid the effect of these payments. He has invoked some cases establishing the proposition that satisfaction by a stranger is no bar and no payment, and insists that as none of the defendants now before the court paid any portion of the amount which was contributed to make up the loss to which reference has been made they must be held responsible by the application of the rule stated. The

case of the *Atlantic Dock* v. *The Mayor* (53 N. Y., 64) is one of the cases to which the learned counsel referred. In that case it was declared that a judgment obtained against the city of Brooklyn for the same cause of action urged against The Mayor, etc., and which was paid, was not a satisfaction of the judgment appealed from, and for the reason that conceding the cause of action to exist against The Mayor, etc., there never was any cause for damages against any other person, and it followed that the recovery of a judgment against another, and the receipt of payment thereof from the other, was a wrong done to it, and it was no less a wrong because it assumed the forms of the law and was compassed by the adjudication of the courts. A wrong done to one, in other words, will not extinguish a right against another.

A reference is made in the opinion to some earlier cases. For example, it was said that payment by a stranger, between whom and the defendant there is no privity, cannot be availed of, a proposition which was supposed to be sustained by the case of *Bleakley* v. *White* (4 Paige, 654). The case cited, however, is one in which a judgment was obtained by a police officer of this city. It was decided in his favor and costs were granted him against the plaintiff, which were subsequently paid to him by the corporation as a gratuity. It was held that such payment was no bar to a suit by a creditor's bill to recover the costs out of the property of the plaintiff in the original suit. The chancellor said that it was evident from the facts stated in the pleading that the corporation did not make the payment for the benefit of the defendant, but as a gratuity to the officer for the loss he was supposed to have sustained in consequence of an act done in the discharge of his duty. It was further said, however, that the payment of the amount without any agreement, expressed or implied, that the judgment was to be holden for the benefit of the corporation gave the corporation no equitable claim upon the defendant, though they might have a claim upon the plaintiff for the recovery of the money if he were successful in collecting it from the one who in justice ought to pay it, and the rule was alluded to, namely, that a satisfaction by a stranger cannot, even by law, be pleaded in bar of a debt or covenant which the defendant was legally bound to pay, and reference was made to the case of *Clow* v. *Borst* (6 Johns., 37).

That case seems to be the pioneer decision in this State on the subject to which it relates. It was an action brought for a breach of a covenant. The defense was that on the 25th of November, 1808, the plaintiff took, accepted and received a discharge of a certain action then pending against him in the Supreme Court, in favor of one Michael Borst, in full satisfaction and discharge of all damages and costs sustained by the plaintiff by the breach of the covenant. In a *per curiam* opinion the court said, referring to the case of *Grymes* v. *Bolfield* (Cro. Eliz., 541), which it was said was cited as the law by Baron COMYNS (tit. Accord A, 2), that it was held not to be a good plea of accord and satisfaction to a bond that a stranger had surrendered a tenement to a plaintiff in satisfaction of a debt which he accepted, because the stranger was not privy to the bond and the satisfaction given by him was not good. It was further said that it did not appear to have been questioned that the pleading was bad and judgment must be given for the plaintiff.

The case of *Daniels* v. *Hallenbeck* (19 Wend., 410), was also referred to by FOLGER, J., in the *Atlantic Dock* v. *The Mayor ;* and it was there held that a plea of accord and satisfaction alleging the satisfaction as moving from a stranger was bad. As in the case of *Clow* v. *Borst* (6 Johns., 37), however, it was declared to be a question of pleading. It appeared therein that an arrangement was set out by which a stranger was to discharge the obligation sued upon.

The court said : "This is a question of pleading, and although the facts set up by the defendants may amount to a good bar when given in evidence it does not follow that the pleas can be maintained." These are some of a class of cases relied upon by the learned counsel for the plaintiff to sustain the proposition that payments made by persons who are not directly chargeable cannot inure to the benefit of the real debtors. These are all adjudications, except that in 55 New York, involving the consideration of questions of pleading under the old system of special pleading, and nothing more, and are not reconcilable with the present system of pleading in which the facts are to be stated which constitute the defense, and the effect of them if proved to be judicially declared ; and it appears by the answers interposed herein, as already seen, that the amounts were paid to make good the deficiency in the assets of the bank and

to enable it to pay its debts in full. In other words, all was paid which under the circumstances detailed could be asked.

The case in 53 New York (*supra*) was decided on the proposition, but resting on the doctrine of the cases mentioned, and which, as we have seen, relate to a question of pleading, that the judgment set up in bar had been wrongfully obtained, and that the payment of it made was a payment of it and not, therefore, of the claim urged against the mayor, etc. It was, in other words, as if no payment whatever had been made. In this case, however, the payment made by the trustees not only expressly related to but was in fact the payment of the deficit occasioned by the loss from the purchase of the North Carolina bonds, and indeed of any other loss at the time that the examination was made. It was a payment of the demand herein urged.

The answers therefore, whether regarded as pleas setting out an accord and satisfaction or pleas in bar, were sufficient to present, and did present, the defense of payment or discharge of the obligations incurred, and unless the old rule of pleading is to prevail that payment by the trustees, other than the defendants, is to be regarded as one made by strangers, and therefore no discharge of the indebtedness incurred by the purchase of the North Carolina bonds, then the judgment is correct. This element confronts the plaintiff's case *in limine* and controls it.

It seems to be established in this case also and conclusively that the amounts paid, contributed or subscribed, by whatever term they may be designated, were given for the purpose of continuing the existence of the bank as an organization. That seems to have been the consideration inducing them and the bank was continued. If the deficit had not been made up, and the sums lost by the improper purchase of North Carolina bonds had not been reimbursed, a report would doubtless have been made and the bank closed ; and if it had been, and the amount of the loss occasioned by this circumstance had been paid, it matters not by whom, there would have been no cause of action existing.

It is difficult to understand on what principle the defendant's trustees, even if they contributed nothing, could be held responsible to the plaintiff. Except as matter of pleading, under the old sys-system, there does not seem to be any reason why a stranger may

not discharge another's obligation if he choose to do so. He may indemnify himself by taking an assignment of the claim as suggested in the case in 19 Wendell; but if he prefer not to do that and to regard it as a gratuity, he may enjoy the consciousness of having done a wise or a foolish thing as the fact presents itself to him. But the creditor's debt must be regarded as satisfied, and there is no reason why he should be permitted to demand a second payment from his debtor.

If any rule is to be applied it ought to be that the person paying the debt, and he alone, should be subrogated to the right of the creditor; and he alone, if any person, should be permitted to enforce the claim. It may be that he would be met, under well established rules, with the proposition that a voluntary payment of another's debts, as a general rule, gives to the payer no right of action against the original debtor, and under existing rules, perhaps, he could not maintain an action to recover the money advanced. But if any person is to succeed to the right of action under the circumstances detailed, it should be the person who pays the debt or discharges the obligation, and no other.

The receiver in this case is seeking to obtain against delinquent trustees a claim incurred by their violation of duty, but which has been paid, and against which the bank has therefore been indemnified, and indemnified as the result of a proceeding on the part of the officers of the State who were intrusted with the examination of the affairs of the bank; and who, after a proper investigation duly made, announced the amount of money that was necessary to make compensation for such losses.

It is eminently due to the counsel for the appellant to say that he has evidently labored most industriously to obviate the legal effect of the payment made and proved of the claim set up, and his brief is not only elaborate, but learned, ingenious and exhaustive. But the difficulty underlying the right of the plaintiff to recover as already suggested is one which no ingenuity can overcome, no learning vanquish. The payment set up is an obstacle which cannot be surmounted.

The views expressed upon the subject by the learned justice presiding at the Special Term meet with our approbation and are adopted as conclusive.

The receiver's case, on contemplation of it, has no merit, and the judgment appealed from must therefore be affirmed, but without costs.

Davis, P. J., concurred.

Present — Davis, P. J., and Brady, J.

Judgment affirmed, without costs.